W. J. C. ALLEN, APPELLANT, v. LLOYD E. BEST, CARL E. BEST, W. C. TETWELL, W. H. HENDRICKS AND ALLEN STAMP, SEAL AND MANU-FACTURING COMPANY, A CORPORATION, RESPONDENTS.

Kansas City Court of Appeals. January 11, 1926.

1.—Corporations—Accounting—In Suit to Recover Stock Failure to Tender Amount Borrowed and to Prove Right to Accounting Held Sufficient to Justify Refusal of Relief. In a suit in equity against transferees of corporate stock to have sale thereof declared to be a pledge for a loan and for an accounting, held failure to show tender of amount alleged to have been borrowed, that transfer was intended as a pledge, and to prove right to receive any balance after debt was paid, sufficient to justify refusal of relief.

2.—Same—Shares of Stock Can Only be Transferred by Holder or Someone Authorized by Him To Do So. Shares of stock in a corporation can only be transferred by the holder of stock or by someone authorized by him to do so.

3.—Same—Evidence Held Not to Show Plaintiff Was Equitable Owner of Stock. In a suit to recover stock and to have sale thereof adjudged a pledge secure a loan and for an accounting, by one claiming to be equitable owner thereof, which had been issued in name of another and transferred by mother of plaintiff, evidence held insufficient to show that plaintiff was equitable owner thereof.

---

*Corpus Juris-Cyc. References: Corporations, 14CJ, p. 683, n. 98 New; p. 749, n. 87; p. 750, n. 20.

Appeal from the Circuit Court of Jackson County.—Hon. O. A. Lucas, Judge.

AFFIRMED.

*H. S. Julian* for appellant.

*Ed. E. Aleshire* for respondents.

McCUNE, S. J.—This is a suit in equity brought by the plaintiff and his mother, Isabella Allen. The amended petition alleges that the defendant Allen Stamp, Seal and Manufacturing Company is a Missouri corporation with capital stock divided into 1260 shares of the par value of $10 each; that the plaintiff W. J. C. Allen is the owner of 640 shares of said capital stock issued in the name of George Hanlon, who held said stock as trustee for said plaintiff; that the defendants Lloyd E. Best and Carl E. Best entered into a conspiracy with one W. C. Tetwell to defraud plaintiffs, which resulted in the sale by Isabella Allen of all the property and capital stock of the corporation to the said defendants Lloyd E. Best and Carl E. Best for the sum of $3,000; that the plaintiff Isabella Allen had no power or authority to make such sale. That the conveyance and delivery of the property of the corporation was a mere pledge thereof for a loan of $3,000. The prayer of the petition is that the pretended sale be adjudged to be a pledge or mortgage of said property to secure the repayment of $3,000; that defendants be required to account for the moneys received from the sale of the property and from the business, and that any balance left after paying such indebtedness be paid into court for the plaintiffs. An amended answer was filed by the defendants except W. C. Tetwell, admitting that they are the owners of all the stock of Allen Stamp, Seal and Manufacturing Company as well as of its property and are in exclusive possession thereof and that they purchased the same on or about May 27, 1914, for the consideration of $3,000, all of which has been paid. The answer further alleges that in another suit between these parties the unpaid balance of the consideration for said purchase was paid into court as required by the decree in that suit; that the plaintiff herein (W. J. C. Allen) received one-half of one note for $1,000 given as a part of said purchase price, with interest thereon, in his own name, and that Isabella Allen received the other one-half thereof as attorney in fact for W. J. C. Allen. Plaintiffs in their reply denied generally the allegations of the amended answer and prayed that the defendants be required to turn over to the plaintiff W. J. C. Allen 640 shares of the capital stock of the corporation which had been issued to the said George Hanlon. The judgment of the trial court was for the defendants and the petition was dismissed, but before final judgment Isabella Allen withdrew as party plaintiff. From the judgment against him W. J. C. Allen has appealed.

It appears from the evidence that Allen Stamp, Seal and Manufacturing Company was incorporated in August, 1913. According to the Articles of Association the capital stock amounted to $12,-600 divided into 1260 shares of the par value of $10 each. All of said stock was subscribed and fully paid, in personal property which was itemized in the Articles of Association and consisted of machinery, rubber stamp goods, patterns, steel dies, tools, benches, umbrella and key stock and the good will of the business, all located at 804 Delaware street, Kansas City, Missouri. The incorporating stockholders were George Hanlon, Shawneetown, Illinois, 640 shares, Edward Allen, Kansas City, Missouri, 10 shares, Richard Henry, Kansas City, Missouri, 10 shares, and Isabella Allen, Kansas City, Missouri, 600 shares. The Articles of Association stated that all of the shares issued to Isabella Allen, except one share, were to be treasury stock.

The first board of directors consisted of Edward Allen, Isabella Allen and Richard Henry. Edward Allen was President and Isabella Allen, his wife, Secretary of the company.

Stock certificate No. 50 for 640 shares of stock was issued to George Hanlon, the certificate being dated August 25, 1913, and signed by the President and Secretary. Isabella Allen attempted to execute an assignment of this certificate as attorney-in-fact for George Hanlon although she held no power of attorney from him. There appears at the bottom of the assignment upon the back of the certificate the following: "George Hanlon by Isabella Allen, Attorney-in-fact." The blank space for inserting the name of the assignee was not filled in. The assignment was dated August 26, 1913. Mrs. Allen testified that she delivered this certificate together with certificates for all the remainder of the stock of the company, including the 599 shares of treasury stock, to defendant W. C. Tetwell as collateral security for a loan of $1,000, but of which sum Tetwell actually furnished only $300. This money was obtained from him for the benefit of herself, her husband and the corporation. She testified that she had no authority to issue or deliver the treasury stock to Tetwell. Certificate No. 50 was never delivered to George Hanlon. In his deposition taken in St. Louis January 15, 1924, he testified that Mrs. Allen had written him that some stock in the Allen Company had been issued to him in trust for her son, W. J. C. Allen, who was a minor, but that she did not send him the stock and he wrote her that he did not want to be bothered with it and asked her to get someone else to act as trustee. He testified that he had never seen the stock and had no interest in it and that he did not know whether the stock had ever been transferred to anyone after it had been issued to him. Mrs. Allen testified that her mother, who had died about twenty years

before the trial (May, 1924) had given her $3,000 to put into business for her son, the plaintiff, when he came of age; that she had used this money in the Allen Stamp and Seal Company and for this reason she had issued this stock in Hanlon's name as trustee for her son. She testified that Hanlon was an old friend, and that she had it so issued because her son was traveling. She testified he was born in 1890 and was eight or ten years old when her mother gave her the money.

On May 26, 1914, a contract was entered into between the Allen Stamp, Seal and Manufacturing Company, party of the first part, and Carl E. Best and Lloyd E. Best, parties of the second part, under which the company sold to the Bests all the property owned by the company for a consideration of $3,000, of which $100 was paid in cash at the time the contract was signed and the balance was represented by notes aggregating $2900. The contract provided that the Allen Company should assign all of the stock of the company to the Bests but the company should hold the same as collateral security for the payment of the purchase price of the property. It was further provided that the existing indebtedness of the company did not exceed $32 and that the purchasers might pay this and deduct the amount from the note for $400, which would be the first note to mature. The contract was executed in the name of Allen Stamp, Seal and Manufacturing Company by Edward Allen, President, and Isabella Allen, Secretary. Complying with the provisions of the contract new certificates of stock, all dated May 26, 1914, signed Edward Allen, President, and Isabella Allen, Secretary, were issued as follows: Certificate No. 57 for 125 shares to Carl E. Best, Certificate No. 58 for 125 shares to Lloyd E. Best, Certificate No. 59 for 250 shares to Carl E. Best, Certificate No. 60 for 250 shares to Lloyd E. Best, Certificate No. 61 for 250 shares to Carl E. Best, Certificate No. 62 for 250 shares to Lloyd E. Best, and Certificate No. 63 for 10 shares to Flora M. Best, who appears to have been the mother of Carl and Lloyd Best, totaling 1260 shares. These certificates were thereupon delivered to Isabella Allen as collateral security for the payment of the notes given for the purchase price of the property. At the time these new certificates were issued the old certificates for all the stock of the company was assembled and cancelled.

Ed E. Aleshire, an attorney for the defendants in this case, testified that he represented the Bests when the contract above referred to was entered into. At that time all the stock then outstanding was presented to and inspected by him except 599 shares that Tetwell held as security for the $300 loan. Mrs. Allen signed an order, which was introduced in evidence, authorizing Aleshire to pay Tetwell the $300 and interest; that he gave Tetwell a check

for $319.47 and that the stock held by Tetwell was then turned over to him. Then with all the stock in his possession Mrs. Allen and the Bests came to his office and they marked all the shares of stock cancelled, the word "Cancelled" upon the certificates being in his handwriting. The new stock was then issued to the Bests as above stated and all turned over to Mrs. Allen as collateral security for three notes aggregating $2500, one note being for $500, due in one year; one for $1,000 due in two years; and one for $1,000 due in three years; that she held these notes until after the suit hereinafter referred to was brought when the notes were turned over to the clerk of the court. Mr. Aleshire further testified that the Hanlon certificate was in the possession of Mrs. Allen and was turned over to him.

On September 21, 1914, a suit was filed in the circuit court of Jackson county by Allen Stamp, Seal and Manufacturing Company, Carl E. Best, Lloyd E. Best and Flora M. Best, as plaintiffs, against Isabella Allen as defendant. The petition alleged that on May 26, 1914, the defendant was the Secretary of the Allen Company and in her individual capacity owned and controlled all of the stock of the company; that the plaintiffs, Carl E. and Lloyd E. Best had on May 26, 1914, purchased all of said stock consisting of 1260 shares, and that certificates were issued to them therefor; that the stock and the machinery connected with the business had been purchased from Isabella Allen for $3,000; that $100 had been paid in cash and $400 about June 26, 1914; that to secure the payment of the balance of the purchase price plaintiffs Carl E. and Lloyd E. Best made to Isabella Allen notes dated May 26, 1914, as follows: One note for $500 due May 26, 1915, one note for $1,000 due May 26, 1916, and one note for $1,000 due May 26, 1917; that the contract between the parties provided that the indebtedness of the company did not exceed $32; that in fact the indebtedness greatly exceeded this amount. Plaintiffs prayed for an injunction enjoining the defendant from selling the said notes or the shares of stock held by her as collateral security. Isabella Allen in her answer to this petition alleged among other things that George Hanlon was one of the incorporators of the company and that when the contract was made with the Bests, George Hanlon was the owner of 640 shares but that defendant had been advised and believed and alleged the fact to be that one Edward Reynolds was the equitable owner of these 640 shares; that in October, 1913, Edward Allen and the defendant Isabella Allen borrowed for the benefit of themselves and the corporation $300 from C. W. Tetwell and gave him their note for that amount. That in October, 1913, the stockholders of the company delivered their respective stock in said company to the said Allens for their accommodation and

for the accommodation of the company, the same to be placed with Tetwell as collateral security for the payment of the note, and all of said stock was delivered to said Tetwell as such security; that the Bests had enlisted the services of her husband, Edward Allen, in getting control of the company and had given him employment and soon after the contract was signed his affections became alienated and he separated from the defendant. She further alleged fraud and deceit on the part of the Bests in their connivance with her husband to sign the contract of sale. She asked, among other things, that all of the stockholders of the company be made parties, including Edward Reynolds and George Hanlon, and she prayed that the contract be adjudged void. No mention is made in this answer of the plaintiff in this case, W. J. C. Allen. The answer is verified by Isabella Allen. The decree of the circuit court found that Carl E., Lloyd E. and Flora M. Best owed the sum of $2500, evidenced by three notes, as the purchase price of the Allen Stamp, Seal and Manufacturing Company; that the claim of Ed Reynolds was based upon the purchase of one-half interest from Isabella Allen and that he was entitled to a lien on a one-half interest in the funds due from the plaintiff, and that one Mrs. Mollie C. James was entitled to a lien on one-half of the funds. The decree of the court granted the plaintiffs a permanent injunction, ordered that the notes and the stock be and remain in the hands of the clerk of the court and that upon the payment by the plaintiffs of the notes the stock should be delivered to the plaintiffs. After the decree was entered W. J. C. Allen filed a motion to set aside the judgment, stating that he was not a party to the suit but was the owner of 640 shares of the stock of the corporation, having invested $2400 in the corporation and that these shares had been issued to George Hanlon in trust for him. This motion was denied.

Mrs. Allen testified in this case that in the injunction suit brought by the Bests against her she asked the court to allow Reynolds' interplea because he owned the Hanlon stock. She explained this by saying that a lawyer wanted her to have a "straw man" and as her son was out of town Reynolds appeared as a straw man. She also stated that two other lawyers said she must have a straw man to represent her in Missouri. The money that was paid into court by the plaintiffs in the injunction suit against Mrs. Allen was paid out as follows: The first $500, after deducting costs, was paid one-half to E. D. Reynolds and one-half to Mollie James. The next payment of $1060 was paid one-half to W. J. C. Allen, the plaintiff in this case, or to his mother, Mrs. Allen, for him, she first having received from Reynolds an assignment of his right to his money. One-half of the next payment of $1060 was also paid to

Mrs. Allen for the plaintiff, so that plaintiff or his mother for him received $1060 of the $2500 paid into court as consideration for the sale of the stock and property of the corporation, or nearly one-half of the net proceeds of the sale.

On a date which is not fixed definitely by the record George Hanlon executed an instrument which recited that he had been informed that 640 shares of the stock of the Allen Company had been issued to him in or about the year 1912, to hold as trustee for W. J. C. Allen, but which had never been delivered to him. He, therefore, assigned his interest in this stock to the said W. J. C. Allen. Although this assignment was dated December, 1923, it must be presumed that it was in reality after January 15, 1924, as Hanlon in his deposition taken on the last-mentioned date testified that he did not know of any transfer of this stock having been made.

1. Although the petition alleges that Isabella Allen had no authority to sell the property of the corporation it in effect admits the validity of the transfer to the extent that it was a valid pledge to secure the repayment of a loan of $3,000; and the prayer is for an accounting and that any balance left after discharging this indebtedness be paid into court for the plaintiffs W. J. C. Allen and Isabella Allen. No tender is made of the amount alleged to be due and no proof was offered at the trial to support the allegation that the transfer was intended to be a pledge. There is, therefore, no evidence to support a decree ordering an accounting by a pledgee in possession of the property, nor is there any evidence that respondents received any money from the operation of the business or the sale of the property. Appellant's brief makes no reference to these allegations of the petition. His contention, as we understand it, is that he is the owner of the 640 shares of stock represented by the Hanlon certificate and that the transfer to the Bests was wholly unauthorized and is, therefore, void and that he is entitled to have an accounting and to the appointment of a Receiver. Under the allegations of the petition it would be difficult to grant appellant the relief now asked without providing for the payment of the money alleged in the petition to have been borrowed. The failure of appellant to offer any proof in support of the cause of action pleaded, viz. a right to receive any balance after the debt was paid, would justify this court in affirming the judgment for the defendants. We will, however, give consideration to appellant's contention that the Hanlon stock belonged to appellant and that he is entitled to have his rights as such owner protected.

2. The certificate of stock issued to George Hanlon did not indicate in any way that it was issued to him as trustee. Therefore, if Isabella Allen in assigning the certificate as attorney-in-fact for George Hanlon had been authorized by Hanlon to assign it, the purchaser of the stock could hold it free from any claim of the

plaintiff unless the purchaser had knowledge actual or constructive that Hanlon was a trustee for W. J. C. Allen. Appellant, however, contends that as Hanlon's stock was assigned by Isabella Allen without authority; appellant as Hanlon's assignee is the owner of this stock. Authorities are cited holding that shares of stock in a corporation can only be transferred by the holder of the stock or by someone authorized by him to do so. There can be no question that the law in this respect is correctly stated by appellant. But to make it applicable to this case it must first be found that appellant is the equitable owner on account of the fact that his money was invested in the business. Hanlon never had any right to the stock and he is not complaining because Mrs. Allen sold it without authority from him. Appellant's right to the stock if any is not because it has been assigned to him by Hanlon but because appellant was entitled to it in equity from the date of the incorporation of the company. If appellant had no money invested in the company then he has no interest in this stock and he cannot complain because of the act of his mother in disposing of it.

The evidence in this case fails to convince us that any money belonging to the plaintiff went into the Allen Company or into the business which was acquired by the company at the time of its incorporation. The articles of incorporation show that no money was paid in, the entire capital stock having been issued for the property and for the established business which had prior to that time been located and carried on at 804 Delaware street in Kansas City.

From the date of the incorporation of the company its affairs were conducted in a most unusual manner. Isabella Allen appears to have dealt with the corporation and with its property as the sole owner thereof. There is no record of any meetings of directors or election of officers and no meeting of the stockholders after the first meeting of the incorporators August 21, 1913. Of the 1260 shares of stock 640 shares were issued to George Hanlon without his knowledge or consent and 599 shares were left in the treasury. The remaining twenty-one shares were held ten shares by Edward Allen, ten shares by Richard Henry and one share by Isabella Allen. Edward Allen, who acted as President, seems to have had nothing to do except to occasionally sign stock certificates. Mrs. Allen as secretary of the company appears to have had actual possession of all of the certificates of stock. She borrowed money from Tetwell and delivered to him as security for the loan certificates for all of the stock, including the treasury stock and the Hanlon stock. She joined with her husband in signing a contract as officer of the company selling the property and stock of the company to the Bests. She was the only representative of the company who was present when certificates for all of the stock were delivered

to the Bests and she received back from them all of these certificates and held them as security for the payment of the notes given for the purchase price of the property. So far as the record shows she did all of these things without protest or objection from any of the other alleged stockholders, and the most reasonable explantation for this otherwise unlawful conduct is that she had the right to do these things and that there was no one entitled to object.

Mrs. Allen was the only witness on behalf of the plaintiff at the trial. The absence of Edward Allen, husband of Isabella Allen, whose testimony would have been important, was explained by Mrs. Allen by the statement that his affections had become alienated and that he was employed by the Bests. The plaintiff, W. J. C. Allen, lived at Omaha, Nebraska. He was not present at the trial and his deposition was not taken. Isabella Allen's testimony is far from satisfactory. It contains many references to her own unlawful acts; her delivery of the treasury stock without authority; her assignment of Hanlon's stock without any power of attorney from him; and her sale of the property of the company without authority from the board of directors. She testified that she was not accountable for some things she did. She said if she had been in her right mind she would not have signed the contract. Her testimony as to the payment of $3,000 to her by her mother for plaintiff and the reason she assigned for issuing the stock to Hanlon as trustee is not convincing, particularly in the light of other statements that she had previously made with reference to this matter, to which reference will be made later. Plaintiff was born in 1890 and he was, therefore, twenty-three years old when the Allen Company was incorporated and there was no reason disclosed by the record why the stock should not have been issued to him if he was entitled to it. Her testimony concerning the issuance of the certificate of stock to Hanlon as trustee is discredited by her verified answer filed in the injunction suit brought against her by the Bests, in which she alleged that she had been advised and believed that the stock which had been issued to George Hanlon belonged in equity to one Edward Reynolds. The testimony of Isabella Allen being, therefore, so uncertain and contradictory and being unsupported by other evidence, the decree of the trial court in dismissing the petition should not be disturbed.

The judgment is affirmed. *Bland, J.,* concurs; *Arnold, J.,* not sitting, having been of counsel; *Trimble, P. J.,* absent.